# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| YONG HUI NICHOLS, | : | |
| Plaintiff, | : | |
| | | Case No. 3:10cv00301 |
| vs. | : | |
| | | District Judge Timothy S. Black |
| MICHAEL J. ASTRUE, | : | Magistrate Judge Sharon L. Ovington |
| Commissioner of the Social | | |
| Security Administration, | : | |
| Defendant. | : | |

## REPORT AND RECOMMENDATIONS[1]

### I. INTRODUCTION

Plaintiff Yong Hui Nichols filed two applications with the Social Security Administration: one seeking Disability Insurance Benefits, the second seeking Supplemental Security Income. She asserted in both applications that she had been unable to work beginning on July 26, 2006 when she suffered a severe left-shoulder injury.

After the Social Security Administration initially denied Plaintiff's applications, she proceeded to two hearings before Administrative Law Judge (ALJ) Amelia G. Lombardo. Plaintiff appeared and testified at both hearings without legal representation.

---

[1] Attached hereto is NOTICE to the parties regarding objections to this Report and Recommendations.

An interpreter assisted Plaintiff during the first hearing because her native language is not English. Plaintiff testified without the help of an interpreter during the ALJ's second hearing. (Doc. #5, *PageID* #s 49-71, 496-507). On August 25, 2009, ALJ Lombardo issued a written decision partially granting and partially denying Plaintiff's applications. *Id*. at 38-48. More on this later.

Plaintiff brings the present case *pro se* contending that she has suffered continual left shoulder pain since 2005. (Doc. #11). She requests an award of disability benefits from June 2006 through September 2009. *Id*. The Commissioner of the Social Security Administration seeks an Order affirming ALJ Lombardo's decision.

The case is before the Court upon Plaintiff's "Response" (Doc. #11), the Commissioner's Memorandum in Opposition (Doc. #16), the administrative record, and the record as a whole. This Court has subject matter jurisdiction over this matter. *See* 42 U.S.C. §405(g).

**II.     Background**

  **A.     Plaintiff**

Plaintiff was born in South Korea. She completed school there through the third grade. (Doc. #5, *PageID* #s 60, 264).

Plaintiff married a member of the United States military and moved with him to the United States. As of 2009 she had lived in the United States for twenty-one years. *Id*. at *PageID* # 60.

Plaintiff has worked various paid jobs in the United States. For example, she worked as a bus-person in fast-food restaurants, a cook in a McDonald's restaurant, a mail sorter, an office cleaner, and a hotel maid. (Doc. #5, *PageID* #s 179-85). Plaintiff's former jobs, as the ALJ determined, did not constitute "past relevant work" due to the limited time she spent, and the relatively small amount of money she earned, at those jobs.

Plaintiff explained to the ALJ that she had worked in a restaurant for 20 years and "lifted heavy stuff." (Doc. #5, *PageID* # 56). She experienced "lots of pain from ... working [in] a restaurant," and she took "a lot of pain . . . medicine," which made her "stomach worse." *Id*. at *PageID* #s 56-57. She stopped working at a Wendy's restaurant because she "was in such pain and there were times when [she] screamed..." because of the pain. *Id*. at *PageID* # 57. She would see a doctor, who gave her injections in her arm every three months, which made her other arm hurt. She would take a "pain pill for that." *Id*.

Plaintiff did some housework occasionally, cooked meals for herself, and did her own laundry. *Id*. at 58-59. She has a son who was age twelve (in 2009) and a daughter who was age eighteen (in 2009). Plaintiff did not live with her two children but during some periods, she saw them everyday, when her ex-husband allowed. *Id*. at 59, 503. She worried for her children. *Id*. at 59. And she frequently attended Catholic mass. (Tr. 31).

Plaintiff explained during the ALJ's first hearing:

> My arm just, it really hurts a lot. And now when I do take pain killer, like, day before I took some medication. This really upset my stomach. And then I just worry. And then my head is pounding and I want to tell ... that I have a younger child who I need to take care of and I need to survive....

(Doc. #5, *PageID* # 61).  Plaintiff also testified that she had pain in her left shoulder, pain in her right leg, pain in her right side, and pain behind her neck ("They go all the way back.").  *Id.* at 502.

### B. Medical Source Opinions

In December 2006 a consulting psychologist, Jennifer Scott, Psy.D. evaluated Plaintiff for the Ohio BDD.  Dr. Scott diagnosed Plaintiff with generalized anxiety disorder, and Dr. Scott recognized the need to rule out a learning disorder NOS.  (Doc. #5, *PageID* # 265-66).  Dr. Scott opined that Plaintiff's ability to relate to others did not appear impaired.  Her ability to understand, remember, and follow simple instructions was moderately impaired.  Her ability to maintain attention, concentration, persistence, or pace was moderately impaired in her.  And her ability to withstand the stress and pressure associated with day-to- day work activities was moderately impaired.  *Id.* at 266.

Also in December 2006 psychologist Alice Chambly, Psy.D. reviewed the file and concluded that Plaintiff had no significant limitation in most areas of her mental work ability.  (Doc. #5, *PageID* #s 267-69).  Dr. Chambly thought that Plaintiff was moderately impaired in several areas, for example, her ability to be punctual, and her

ability to set realistic goals or make plans independently of others. *Id*. Dr. Chambly did not believe that Plaintiff was markedly limited in any area of mental work ability.[2] *See id*.

In January 2007 physician Elizabeth Das, M.D. reviewed the file at the request of the Ohio Bureau of Disability Determinations (Ohio BDD). Dr. Das concluded that Plaintiff could occasionally lift and/or carry up to 20 pounds, frequently lift and/or carry up to 10 pounds, stand and/or walk about 6 hours in an 8-hour day; sit about 6 hours in an 8-hour day, but was limited with respect to her ability to reach including overhead reaching. (Doc. #5, *PageID* #s 289-91). Dr. Das's supporting explanation referred to Plaintiff's (1) left rotator cuff tendonitis, (2) normal gait, (3) full range of spinal motion, (4) tenderness along her left subacromial space, (5) positive impingement sign, (6) positive Hawkins and Neers sign, and (7) equal strength and reflexes bilaterally. *Id*. at 289. Dr. Das noted that Plaintiff was undergoing physical therapy (PT) and that she had "[d]ifficulty with pain even after PT, which provides little relief." *Id*. at 289-90.

In February 2007 Thomas Comte, M.D., a physician with the Family Health Center, saw Plaintiff and opined that she was unable to "return to work/school ... indefinitely" because of a left rotator cuff injury. (Doc. #5, *PageID* # 340). Dr. Comte briefly documented that opinion on one page of a small notepad. *See id*. He did not, however, refer to any medical evidence or test results in support of his opinions. *Id*.

---

[2] In March 2007 a psychologist, Jennifer Swain, Psy.D., reviewed the file and affirmed Dr. Chambly's December 2006 assessment. (Tr. 262).

In April 2007 Cindi Hill, M.D. reviewed the file at the Ohio BDD's request. Dr. Hill believed that Plaintiff could occasionally lift and/or carry up to 20 pounds; frequently lift and/or carry 10 pounds; stand and/or walk about 6 hours in an 8-hour workday; and sit about 6 hours in an 8-hour workday. (Doc. #5, *PageID* # 299). Dr. Hill also thought that Plaintiff should never do any overhead reaching with her left arm and should never do any balancing or crawling. *Id*. at 300-01.

### C. Vocational Expert Testimony

A vocational expert testified during the ALJ's first hearing. He considered the number and examples of jobs available for a hypothetical person of Plaintiff's age, education, and work experience, who was limited to unskilled, simple, low stress, light-level work, with only occasional overhead reaching with the left arm. (Doc. #5, *PageID* # 60-70). The vocational expert thought that within the regional (Cincinnati, Dayton, Springfield) economy, approximately eight to ten thousand jobs available to a hypothetical person with these characteristics. *Id*.

## III. Administrative Decision

### A. The "Disability" Requirement

Determining whether a social security applicant is eligible to receive Disability Insurance Benefits (DIB) and/or Supplemental Security Income (SSI) often turns on whether the applicant is under a "disability" within the meaning of the Social Security Act. *Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986). The universe of benefit-

6

qualifying disabilities is finite.  It consists of physical or mental impairments that are both medically determinable and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in substantial gainful activity that is available in the regional or national economies.  *Bowen*, 476 U.S. at 469-70; *see Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007); *see also Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001).

Applicants for social security benefits bear the ultimate burden of establishing that they are under a disability.  *Ferguson v. Comm'r of Soc. Sec.,* 628 F.3d 269, 275 (6th Cir. 2010).

### B. The ALJ's Decision

ALJ Lombardo sequentially evaluated the evidence under 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) and reached the following conclusions:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2011.

2. The claimant has not engaged in substantial gainful activity since July 26, 2006, the alleged onset date....

3. The claimant has the following severe impairments: rotator cuff tendonitis, shoulder impingement syndrome, and an anxiety disorder NOS$^3$....

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d) and 416.920(d)).

---

$^3$ "NOS" or "not otherwise specified" in the <u>Diagnostic and Statistical Manual of Mental Disorders</u>.

7

5. ... [T]he claimant has the residual functional capacity to perform light work[4] as defined in 20 CFR 404.1567(b) and 416.967(b) except that she cannot perform more than occasional overhead reaching with the left shoulder and is limited to simple, unskilled, low stress work activity.

6. The claimant has no past relevant work....

7. **The claimant was 51 years old on the alleged date of disability onset. This is defined in the regulations as a younger individual age 18-49. It is also found that, effectively, on May 8, 2009, the claimant attained 55 years of age and her age category changed to an individual closely approaching advanced age (20 CFR 404.1563 and 416.963).**

8. The claimant is illiterate and is able to communicate in English....

9. Transferability of job skills is not an issue because the claimant does not have past relevant work....

10. Prior to May 8, 2006, the date the claimant's age category changed, considering the claimant's age, education, work experience, and residual functional capacity, there were a significant number of jobs in the national economy that the claimant could have performed....

11. Beginning on May 8, 2009, the date the claimant's age category changed, considering the claimant's age, education, work experience, and residual functional capacity, there are not a significant number of jobs in the national economy that the claimant could perform....

12. The claimant was not disabled prior to May 8, 2009, but became disabled on that date and has continued to be disabled through the date of this decision....

(Doc. #5, *PageID* #s 40-48)(emphasis and footnote added).

---

[4] Plaintiff's "residual functional capacity" refers to the most she can still do despite her limitations. 20 C.F.R. § 404.1545(a)(1); *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002). "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds...." 20 C.F.R. §404.1567(b).

**IV.  JUDICIAL REVIEW**

Judicial review determines, in part, "whether the ALJ applied the correct legal standards..." *Blakley v. Comm'r. of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r. of Soc. Sec.*, 478 F3d 742, 745-46 (6th Cir. 2007).  Judicial review also determines "whether the findings of the ALJ are supported by substantial evidence." *Blakley*, 581 F.3d at 406; *see Bowen*, 478 F.3d at 745-46.  Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance..." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).  Substantial evidence is present "if a 'reasonable mind might accept the relevant evidence as adequate to support..." the ALJ's findings.  *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r. of Social Security*, 375 F.3d 387, 390 (6th Cir. 2004).

The existence of substantial supporting evidence does not depend on whether the Court disagrees or disagrees with the ALJ's conclusions.  *Rogers*, 486 F.3d at 241; *see Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999).  Instead, the ALJ's decision is affirmed "if his findings and inferences are reasonably drawn from the record or supported by substantial evidence even if that evidence could support a contrary decision."  *Wright-Hines v. Comm'r. of Soc. Sec.*, 597 F.3d 392, 395 (6th Cir. 2010).

"Yet, even if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'"  *Rabbers v. Comm'r Soc. Sec.*  582 F.3d 647, 651 (6th

Cir. 2009); *see Wilson*, 378 F.3d at 546-47; *see also Kalmbach v. Comm'r. of Soc. Sec.*, 2011 WL 63602 at *6 (6th Cir. 2011)("we must reverse and remand if the ALJ applied the incorrect legal standards, even if the factual determinations are otherwise supported by substantial evidence and the outcome on remand is unlikely to be different.")

## V. DISCUSSION

Plaintiff challenges the ALJ's conclusion that she was not under a disability before May 8, 2009. (Doc. #11, *Page ID* # 519). She states:

> Since 2005 I have suffered with continual pain in my left shoulder.
>
> I am requesting payment of social security disability benefits from the date of my original application [in] June 2006. Specifically I am requesting back payment for the period June 2006 – Sept[ember] 2009.
>
> I need these <u>Funds</u> to allow me to live. Funds for lodging, furnishing and vehicle maintenance.

(Doc. #11, *PageID* # 519) (underline in original).

The Commissioner acknowledges, "there is little doubt that Ms. Nichols suffered continued pain' in her left shoulder from the time of her applications in July and August 2006 through at least the date of ALJ Lombardo's decision in August 2009." (Doc. #16, *PageID* # 536). Plaintiff's medical records bear this out, and this is essentially why the ALJ found Plaintiff's severe impairments to include rotator cuff tendonitis, shoulder impingement syndrome.

Yet the Commissioner overlooks a glaring error in the ALJ's decision: she mischaracterized Plaintiff's age category leading her to misapply rule 202.09 of the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2 (the grids).

ALJs employ the grids at step five of the sequential evaluation "after the claimant has been found not to meet the requirements of a listed impairment but to nevertheless be incapable of performing past relevant work." *Jordan v. Commiss'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008) (citing *Abbott v. Sullivan*, 905 F.2d 918, 926 (6th Cir.1990)). "The grids, in conjunction with the claimant's RFC [residual functional capacity], age, education and work experience, are used to determine whether the claimant can successfully adjust to other work." *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 855 (6th Cir. 2010).

Grid rule 202.09 reveals that a "person closely approaching advanced (age 50-54), who can perform light exertional work, is illiterate, and has performed unskilled or no prior work is under a disability. Grid rule 202.01 follows suit for a "person of advanced age (55 or older)" with the same characteristics. Yet a "younger person (under age 50)" with these same characteristics is not found disabled under grid rule 202.016.

In the present case, the ALJ correctly determined that Plaintiff was 51 years old the date (July 26, 2006) her alleged disability began. *See* Doc. #5, *PageID* #s 46, 131, 136, 160. The ALJ erred, however, by finding that Plaintiff's age – 51 years old – placed her in the category of a "younger individual age 18-49." *Id*. Instead, Plaintiff's age of 51 years old placed her in the category of a "person closely approaching advanced age (age

50-54)..." as defined by Social Security Regulations, 20 C.F.R. §§404.1563(d), 416.963(d).

This led the ALJ to a second mistake: she concluded that Plaintiff's age – 54 years old – on the date of the first administrative hearing (May 8, 2009) <u>changed</u> her age category.  *See* Doc. #5, *PageID* #46.  But it did not.  At age 54 on May 8, 2009, Plaintiff was still in the same age category she had been in since turning age 50 before her alleged disability onset date.  Throughout that period of time she was considered a "person closely approaching advanced age (age 50 to 54)." 20 C.F.R. §§404.1563(d), 416.963(d).  She also continued to be in this age category through the date of the ALJ's first hearing until she later turned age 55 when she changed to the category of a "person of advanced age (age 55 or older)." 20 C.F.R. §§404.1563(e), 416.963(e).

The ALJ correctly applied grid rule 202.09 to find that she was under a disability at age 54, again, when she was a person closely approaching advanced age.  But, contrary to the ALJ's finding, because Plaintiff was in this identical age category on the date of her claimed disability, July 26, 2006, and because she met the other criteria of grid rule 202.09 from that date forward, grid rule 202.09 likewise directed the ALJ to find Plaintiff under a disability beginning on July 26, 2006 and continuing thereafter.

In sum, the ALJ's own rationale, with the exception of her erroneous conclusion that Plaintiff's age category changed on May 8, 2009, and applying the correct age category on the date of her alleged disability onset, grid rule 202.09 dictates the finding

that Plaintiff was under a disability beginning on July 26, 2006 and continuing through the date of the ALJ's hearing.

Accordingly, because all the essential facts have been determined by the ALJ and because those facts, under a direct application of grid rule 202.09, establish that Plaintiff was under a disability beginning on her claimed disability onset date, a remand for award of benefits is warranted. *See Faucher v. Secretary of HHS*, 17 F.3d 171, 173 (6th Cir. 1994).

**IT THEREFORE IS RECOMMENDED THAT:**

1. The Commissioner's decision be AFFIRMED in part to the extent she determined that Plaintiff was under a disability beginning on May 8, 2009 be AFFIRMED;

2. The Commissioner's decision be REVERSED in remaining part and the matter be remanded to the Social Security Administration under Sentence 4 of 42 U.S.C. §405(g) for payment of benefits to Plaintiff consistent with this Report and Recommendation and the Social Security Act; and

3. The case be terminated on the docket of this Court.

July 22, 2011

                                                     s/Sharon L. Ovington
                                                       Sharon L. Ovington
                                            United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).